# GERAGOS & GERAGOS

A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 625-3900
FACSIMILE (213) 232-3255
GERAGOS@GERAGOS.COM

MARK J. GERAGOS          SBN 108325
BEN J. MEISELAS          SBN 277412
Attorneys for Plaintiff JOSEPH WEINBERG

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH WEINBERG, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>VALEANT PHARMACEUTICALS INTERNATIONAL, a Delaware corporation; MEDICIS PHARMACEUTICAL CORPORATION, a Delaware corporation; OBAGI MEDICAL PRODUCTS, INC., a Delaware corporation; BAUSCH & LOMB INCORPORATED, a New York corporation; and DOES 1 through 50, inclusive;<br><br>Defendants. | Case No.: 8:15-cv-01260-DOC-KES<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS VALEANT PHARMACEUTICALS INTERNATIONAL'S, MEDICIS PHARMACEUTICAL CORPORATION'S, OBAGI MEDICAL PRODUCTS, INC.'S, AND BAUSCH & LOMB INCORPORATED'S MOTION TO DISMISS**<br><br>Date:      October 26, 2015<br>Time:      8:30 a.m.<br>Room:      9D<br><br>Action Filed: August 6, 2015<br>Trial Date: Not Set |

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

- i -

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................1

II.   STATEMENT OF FACTS ...................................................................2

III.  LEGAL STANDARD ..........................................................................5

IV.   ARGUMENT........................................................................................6

     A.   Plaintiff's Claims Against Medicis, OMP and Bausch & Lomb Should Not Be Dismissed Because Plaintiff Has Sufficiently Alleged Affirmative Conduct by Valeant's Subsidiaries' and It Has Properly Alleged Alter Ego Liability ...........................................................6

          1.   Mr. Weinberg's Complaint alleges employment by Valeant subsidiaries and alleges affirmative conduct of those subsidiaries ......................................................................6

          2.   Mr. Weinberg's Complaint properly alleges alter ego liability........8

     B.   Plaintiff's FEHA-Based Claims Should Not Be Dismissed Because Mr. Weinberg Did File an Administrative Complaint with the DFEH Which Was Timely Under the Circumstances....................................................11

     C.   Plaintiff's FEHA-Based Claims Should Not Be Dismissed Because He Sufficiently Alleges that Defendants' Retaliatory and Discriminatory Conduct Originated Within California........................................................14

V.    CONCLUSION ...................................................................................16

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

1

# <u>TABLE OF AUTHORITIES</u>

2

**Federal Case Law**

3

*Bell Atlantic Corp. v. Twombly*
550 U.S. 544 (2007) ................................................................ 6

4

*Bleu Products, Inc. v. Bureau Veritas Consumer Prod. Servs*.
5  2009 WL 2412413 (C.D. Cal. Aug. 3, 2009) ................................ 8

6

*Coto Settlement v. Eisenberg*
593 F.3d 1031 (9th Cir. 2010) ............................................... 5,6

7

*Daewoo Electronics Am. Inc. v. Opta Corp.*
8  2013 WL 3877596 (N.D. Cal. July 25, 2013) ............................... 9

9

*Emrich v. Touche Ross & Co*.
846 F.2d 1190 (9th Cir. 1998) ................................................. 5

10

*Fed. Reserve Bank of San Francisco v. HK Sys.*
11  1997 WL 227955 (N.D. Cal. Apr. 24, 1997) ................................ 9

12

*Gilligan v. Jamco Dev. Corp.*
108 F.3d 246 (9th Cir. 1997) .................................................. 5

13

*Gonsalves v. Infosys Technologies, LTD*.
14  2010 WL 1854146 (N.D. Cal. May 6, 2010) ............................... 14

15

*H.C. Duke & Son, LLC v. Prism Mktg. Corp*.
2012 WL 2792443 (C.D. Ill. July 9, 2012) .................................. 8

16

*Hoang v. Vinh Phat Supermarket, Inc.*
17  2013 WL 4095042 (E.D. Cal. Aug. 13, 2013) ............................... 9

18

*Legacy Wireless Servs., Inc. v. Human Capital, L.L.C.*
314 F. Supp. 2d 1045 (D. Or. 2004) .......................................... 9

19

*Monaco v. Liberty Life Assur. Co*.
20  2007 WL 1140460 (N.D. Cal. Apr. 17, 2007) ............................... 9

21

*Mossimo Holdings LLC v. Haralambus*
2015 WL 476298 (C.D. Cal. Feb. 3, 2015) ................................. 8,9

22

*Pac. Mar. Freight, Inc. v. Foster*
23  2010 WL 3339432 (S.D. Cal. Aug. 24, 2010) ............................ 9,10

24

*Peloza v. Capistrano Unified Sch. Dist.*
37 F.3d 517 (9th Cir. 1994) .................................................. 5

25

*Sims v. Worldpac Inc.*
26  2013 WL 663277 (N.D. Cal. Feb. 22, 2013) ............................... 14

27

*Unichappell Music, Inc. v. Modrock Prod., LLC*
2015 WL 546059 (C.D. Cal. Feb. 10, 2015) .................................. 9

28

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

*United States v. City of Redwood City*
  640 F.2d 963 (9th Cir. 1981) .................................................................. 5

*Viera v. Chehaiber*
  2010 WL 960347 (C.D. Cal. Mar. 16, 2010) ...................................... 10

*Warren v. Fox Family Worldwide, Inc*.
  328 F.3d 1136 (9th Cir. 2003) .............................................................. 5

*Wallis v. Centennial Ins. Co.*
  2013 WL 3803971 (E.D. Cal. July 19, 2013) ...................................... 9

**State Case Law**

*Associated Vendors, Inc. v. Oakland Meat Co*.
  210 Cal.App.2d 825 (1962) ................................................................ 10

*Campbell v. Arco Marine, Inc*.
  42 Cal.App.4th 1850 (1996) ............................................................... 14

*Holland v. Union Pac. R.R. Co.*
  154 Cal.App.4th 940 (2007)12

*Jackson v. Pasadena City School Dist.*
  59 Cal. 2d 876 (1963) .......................................................................... 6

*Ludgate Ins. Co. v. Lockheed Martin Corp.*
  82 Cal.App.4th 592 (2000) ................................................................... 7

*Mesler v. Bragg Management Co.*
  39 Cal.3d 290 (1985) .......................................................................... 10

*Paul v. Palm Springs Homes Inc*.
  192 Cal.App.2d 858 (1961) ................................................................ 10

*Zoran Corp. v. Chen*
  185 Cal.App.4th 799 (2010) ................................................................. 8


**Statutory & Regulatory Authority**

Cal. Code Regs. tit. 2, § 10018 .......................................................... 12

Cal. Gov. Code § 12901 ..................................................................... 11

Cal. Gov. Code § 12930 ..................................................................... 11

Cal. Gov. Code § 12965(b) ............................................................ 11,13


**Secondary Authority**

Cal. Civ. Prac. Business Litigation §5:10 .......................................... 10

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Plaintiff Joseph Weinberg, husband and father, is an infrastructure engineer by trade who maintains an advanced skillset. Unfortunately, Multiple Sclerosis is a debilitating condition that has taken over Mr. Weinberg's life. One would expect Defendant Valeant, a nationally renowned pharmaceutical company, and its subsidiaries to acknowledge the debilitating symptoms of this incurable disease. But not only has Mr. Weinberg become victim to this awful disease, he has also fallen victim to his former employer Valeant's monstrous denial of sympathy. Shortly after beginning his employment there, the severe stress caused by Valeant's corporate culture and the unlawful orders given by Mr. Weinberg's managers caused him to experience physical manifestations of his Multiple Sclerosis. When Mr. Weinberg approached Valeant's Director of Human Resources to report the hostile work environment and discuss making accommodations due to his health, Mr. Weinberg was terminated.

Unable to substantively defend the horrific and documented conduct that Valeant put Mr. Weinberg through, Defendants instead look to technicalities and alleged procedural defects to prevent Mr. Weinberg's day in court. They move to dismiss the Complaint based on (1) Mr. Weinberg's alleged inability to claim an alter ego theory of liability for the named subsidiaries of Valeant, (2) Mr. Weinberg's alleged failure to timely file an administrative complaint, and (3) Mr. Weinberg's then residence in Arizona as an alleged bar to relief under the Fair Employment and Housing Act.

However, as explained below, Defendants' motion should be denied. First, Mr. Weinberg has successfully satisfied the two-prong test for the alter ego theory of liability by alleging factors of the unity of interest and explaining why an inequitable result would occur if such theory of liability was not acknowledged. Second, Mr. Weinberg did file an administrative complaint with the Department of Fair

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

1   Employment and Housing and received the necessary right-to-sue letter prior to filing
2   this Complaint.  The filing was timely under the circumstances here, where due to the
3   severe physical and mental consequences caused by Valeant's outrageous conduct,
4   Mr. Weinberg's Multiple Sclerosis had flared and caused him limited cognitive
5   ability.  Finally, although Defendants assert that the Fair Employment and Housing
6   Act does not apply to Mr. Weinberg because he was then a resident of Arizona, Mr.
7   Weinberg was harmed by Defendants' conduct within California as a result of work
8   he performed for a California entity.  Thus, Defendants' motion should be denied in its
9   entirety.

## II.

## STATEMENT OF FACTS

12      Beginning in March 2013, Valeant interviewed Mr. Weinberg over a three-
13  month period for a potential employment position to direct Valeant's IT infrastructure.
14  The position would require Mr. Weinberg to perform services for Valeant and its
15  subsidiaries.  Valeant recognized Mr. Weinberg's extraordinarily advanced skillset
16  and concluded its six-month nationwide search to fill this position by offering Mr.
17  Weinberg the Senior Converged Infrastructure Engineer job.  Valeant offered Mr.
18  Weinberg a base salary of $110,000, undisclosed stock grants, a 10% bonus, and
19  medical benefits.  Complaint, ¶ 16.  One of the reasons Mr. Weinberg accepted
20  Valeant's employment offer was because he believed the company, which
21  manufactured and sold neurological medications, would care and have compassion for
22  a Multiple Sclerosis patient such as himself.

23      Mr. Weinberg began his employment at Valeant in May 2013 where he worked
24  directly under the supervision of IT engineering directors Jacob Alao and Steve
25  Schiavone.  He was assigned to work on a variety of different IT-related projects for
26  Valeant's numerous subsidiaries.  Mr. Weinberg was initially enthusiastic and excited
27  about his position and looked forward to going to work each day. *Id.* at ¶ 19.
28  However, he was soon subjected to a hostile work environment and given unlawful

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

orders by his managers including Mr. Weinberg's direct supervisor, Jacob Alao.

Approximately one month into Mr. Weinberg's employment at Valeant, at which time he was assigned to perform services for Defendant Medicis Pharmaceutical Corporation ("Medicis"), Mr. Alao visited Scottsdale, Arizona to meet with Mr. Weinberg. During this visit, Mr. Alao told Mr. Weinberg that he had his own Nigerian financial company called Mongran Financial ("Mongran"), and that Valeant and Mr. Alao's prior employers had helped start Mongran. *Id.* at 22.

Knowing that Mr. Weinberg had access to Valeant's confidential financial databases, Mr. Alao asked Mr. Weinberg if he wanted to help "do business" at Valeant by providing access to those systems. Mr. Weinberg refused to help Mr. Alao, recognizing that providing access to private financial systems was a violation of the Sarbanes-Oxley Act and Payment Card Industry security standards, and that these illegal operations exposed Valeant to substantial liability. Mr. Weinberg refused to comply with Mr. Alao's demands and never provided access to this information to anyone. *Id.* at 23–24.

Mr. Alao's other inappropriate conduct was alarming as well. For instance, one of Mr. Weinberg's assignments required him to perform services for Valeant's subsidiary, Obagi Medical Products, Inc. ("Obagi"). Mr. Alao instructed and insisted that Mr. Weinberg perform data migration in manners that fell below industry standards and, in Mr. Weinberg's extensive experience, would cause the data to become corrupt. When Mr. Weinberg voiced these concerns to Mr. Alao, he insisted and demanded that Mr. Weinberg proceed anyway, going so far as to remotely log-in to Mr. Weinberg's active computer session, take control of his mouse, and make changes to the system to ensure corruption and data loss. Mr. Alao corrupted the data to the point where it became completely unusable. *Id.* at 25.

Mr. Alao became hostile towards Mr. Weinberg after Mr. Weinberg refused to comply with his illegal orders regarding the Mongran and Obagi matters. For example, Mr. Alao would intimidate and tell Mr. Weinberg the "bloody" things that

he would do such as fire people for "the fun of the bloodsport," how Valeant would conduct hostile takeovers of companies and ruin the lives of the preexisting staff by giving them termination dates, and how he found it funny that the girlfriend of Jonah Shacknai, the founder of Medicis, committed suicide by hanging herself while naked from Mr. Shacknai's balcony.  Mr. Alao's retaliatory campaign increased in severity over time.  *Id.* at 26.

The escalating severity and resulting effects of Mr. Alao's intimidating and retaliatory conduct caused the debilitating effects of Multiple Sclerosis to take their toll on Mr. Weinberg.  Mr. Weinberg began to experience difficulty with his cognitive abilities, numbness in his appendages, and mobility problems, all of which signaled that he was suffering brain and spinal column damage.  Mr. Weinberg therefore approached Alison Brunger, Valeant's Director of Human Resources, to discuss making certain accommodations due to his health so that Mr. Weinberg could continue to work for Valeant.  However, Valeant never responded to Mr. Weinberg's complaints.  *Id.* at 27.

 Mr. Weinberg's health continued to decline, and in August 2013, Mr. Weinberg again contacted Ms. Brunger in order to discuss accommodations.  Mr. Weinberg informed Ms. Brunger of his failing health and the hostile and stressful work environment.  Rather than discussing accommodations so that Mr. Weinberg could get treatment, Valeant terminated Mr. Weinberg's employment at its first opportunity.  *Id.* at 29.  Mr. Weinberg was left with no income and Valeant's COBRA insurance that cost him over $1,600 per month, putting the Weinberg family into a dire financial situation.    At the same time, Mr. Weinberg's Multiple Sclerosis worsened and diminished his cognitive ability even further.  Mr. Weinberg was forced to sell his house, car, and stocks, as well as cash out his 401k in order to live, particularly since he and his wife were expecting their second child.  *Id.* at 33.

An MRI in October of 2013 revealed four lesions on Mr. Weinberg's brain, crippling his ability to function, despite his young age, as well as his ability to find

**GERAGOS & GERAGOS, APC**
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

another job.  Sadly, the long-lasting mental and physical pain inflicted upon Mr. Weinberg's as a result of the stressful environment at Valeant was so great that he contemplated suicide.  Thankfully, he decided against taking his own life. *Id.* at 34.

The Weinberg family then moved to Utah with Mr. Weinberg's in-laws so that Mr. Weinberg could focus on healing.  In the Spring of 2014, Mr. Weinberg was prescribed Rituxan from the Barrow Neurological Institute.  When Mr. Weinberg attempted to receive treatment, Valeant's COBRA insurance denied coverage, thus preventing Mr. Weinberg from receiving this life-saving treatment, which he could not otherwise afford.  Mr. Weinberg was prescribed Tysabri instead, which has a high and potentially fatal risk of brain damage, because it was covered by Valeant's COBRA insurance.  *Id.* at 35.

## III.

## LEGAL STANDARD

Motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure are disfavored and rarely granted.  *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1998).  It is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6).  *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

A complaint will survive a motion to dismiss so long as, by taking the well-pleaded factual allegations as true, it contains "enough facts to state a claim to relief that is plausible on its face." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010).  The Court must accept all allegations of fact in the complaint as true and construe them in the light most favorable to the plaintiffs. *Warren v. Fox Family Worldwide, Inc.* 328 F.3d 1136, 1139 (9th Cir. 2003).  The Court must also assume that general allegations embrace the necessary, specific facts to support the claim. *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994).  Once the

pleading standard has been met, the complaint may proceed "even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

**IV.**

**ARGUMENT**

**A.   Plaintiff's Claims Against Medicis, OMP and Bausch & Lomb Should Not Be Dismissed Because Plaintiff Has Sufficiently Alleged Affirmative Conduct by Valeant's Subsidiaries' and It Has Properly Alleged Alter Ego Liability.**

Defendants allege that the claims against Medicis, OMP and Bausch & Lomb should be dismissed because Plaintiff fails to allege any affirmative conduct by these Valeant subsidiaries.  They also allege that the subsidiaries cannot be held liable under the alter-ego theory of liability.  However, as explained below, Mr. Weinberg has alleged misconduct by these subsidiaries sufficient to prove a claim and survive a motion to dismiss.

**1.   Mr. Weinberg's Complaint alleges employment by Valeant subsidiaries and affirmative conduct of those subsidiaries.**

Contrary to Defendants' assertion, Mr. Weinberg has alleged in specificity acts by each of the Defendants that contain "enough facts to state a claim to relief that is plausible on its face" as required to defeat a motion to dismiss.  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010).

Specific allegations made against all defendants and not each defendant individually are sufficient to defeat a motion to dismiss, particularly where the defendants exclusively possess much of the information regarding those allegations. *Jackson v. Pasadena City School Dist.*, 59 Cal. 2d 876, 879 (1963) ("The particularity required in pleading facts depends on the extent to which the defendant in fairness needs detailed information that can be conveniently provided by the plaintiff; less particularity is required where the defendant may be assumed to have knowledge of the facts equal to that possessed by the plaintiff.").

Here, because Mr. Weinberg performed services for all Defendants, specific injury resulting from specific Defendants can only be determined in discovery.  *See*

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

- 7 -

*Ludgate Ins. Co. v. Lockheed Martin Corp.,* 82 Cal.App.4th 592, 608 (2000) (noting that the specificity required of a complaint varies "because modern discovery procedures necessarily affect the amount of detail that should be required in a pleading (internal quotation marks and citation omitted)).    However, Mr. Weinberg has, in fact, alleged affirmative conduct by all subsidiaries that have caused Mr. Weinberg injury.  Specifically, Mr. Weinberg has alleged that "Defendants ratified their agents, servants, employees, and authorized representatives' unlawful conduct and behavior," Complaint, ¶ 44, "Defendants intentionally created or knowingly permitted the [] working conditions to exist," Complaint, ¶ 59, "Defendants managers, employees, and agents engaged in harassing and discriminatory conduct with the intent to cause economic and emotional distress to Plaintiff," Complaint, ¶ 64 and "Defendants were aware, or should have been aware, of the likelihood that Plaintiff would suffer severe emotional distress as a result of the above-described outrageous conduct."  Complaint, ¶ 71.

Further, the Complaint alleges that "Defendants knowingly created and intentionally permitted these intolerable working conditions and failed to take appropriate remedial steps to protect Plaintiff from discrimination, retaliation, and harassment," Complaint, ¶ 72, "Defendants' management failed to discipline, admonish, or timely investigate" the known harassment Plaintiff endured Complaint, ¶ 88, and "Defendants had actual and constructive knowledge of the retaliatory conduct described and alleged herein, and condoned, ratified and participated in the retaliation."  Complaint, ¶ 98.   In addition, paragraph 104 of the Complaint asserts that "[s]pecifically, Defendants failed and have failed to the present time to take any disciplinary action against Jacob Alao, among other individuals, who are responsible for creating the discriminatory and harassing conduct directed at Plaintiff. Additionally, upon information and belief, Defendants have failed to discipline their human resources department for terminating Plaintiff after he requested accommodations for his Multiple Sclerosis."  Complaint, ¶ 104.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

1    Mr. Weinberg has chosen to bring claims against all Defendants but has also

2    specifically outlined Mr. Weinberg's involvement with each the subsidiaries.   As

3    alleged in the Complaint, Mr. Weinberg was "assigned to perform services for

4    Medicis approximately one month after his employment at Valeant."  Complaint, ¶ 22.

5    Further, "One of Mr. Weinberg's assignments required him to perform services for

6    Valeant's subsidiary, Obagi."  Complaint, ¶ 25.  It was during the services provided to

7    Obagi that Mr. Weinberg experienced hostility and intimidation from Mr. Alao.

8    Complaint, ¶¶  26 & 27.  Since Mr. Weinberg has alleged affirmative conduct by all

9    subsidiaries and specified Mr. Weinberg's employment with the subsidiaries, the

10   motion to dismiss on this ground should be denied.

11          **2.    Mr. Weinberg's Complaint properly alleges alter ego liability.**

12          Defendants further claim that alter ego liability has not been alleged and cannot

13   be proven in the instant matter.  However, the theory of alter ego liability does indeed

14   apply here and the two-prong test of alter ego liability is satisfied.  The alter ego

15   doctrine of liability requires a successful showing of a "unity of interest" and

16   "inequitable result."  *Zoran Corp. v. Chen*, 185 Cal.App.4th 799, 811-12 (2010).   In

17   determining whether sufficient facts have been alleged to show a "unity of interest,"

18   courts will consider factors including but not limited to the identical ownership of the

19   entities, employment of the same employees and/or attorney, and use of the corporate

20   entity to procure labor, services or merchandise for another person or entity. *Zoran*,

21   185 Cal. App. 4th at 811-12.

22          In order to defeat a motion to dismiss, the court need not determine the merits

23   of the claim the strength, just whether a plausible claim has been alleged.  *H.C. Duke*

24   *& Son, LLC v. Prism Mktg. Corp*., 2012 WL 2792443, at *5 (C.D. Ill. July 9, 2012)

25   (applying California law); *Bleu Products, Inc. v. Bureau Veritas Consumer Prod.*

26   *Servs*., 2009 WL 2412413, at *1 (C.D. Cal. Aug. 3, 2009); *Mossimo Holdings LLC v.*

27   *Haralambus* 2015 WL 476298, at *1 (C.D. Cal. Feb. 3, 2015).   In doing so, the

28   "pleading requirement is not so strict", *Unichappell Music, Inc. v. Modrock Prod.,*

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

- 9 -

*LLC*, 2015 WL 546059, at *4 (C.D. Cal. Feb. 10, 2015), and only "*some* facts" showing "two or three factors" is sufficient to defeat a motion to dismiss. *Id.*; *Fed. Reserve Bank of San Francisco v. HK Sys.*, 1997 WL 227955, at *6 (N.D. Cal. Apr. 24, 1997); *Daewoo Electronics Am. Inc. v. Opta Corp.*, 2013 WL 3877596, at *5 (N.D. Cal. July 25, 2013); *Pac. Mar. Freight, Inc. v. Foster*, 2010 WL 3339432, at *6 (S.D. Cal. Aug. 24, 2010); *Hoang v. Vinh Phat Supermarket, Inc.*, 2013 WL 4095042, at *14 (E.D. Cal. Aug. 13, 2013); *Wallis v. Centennial Ins. Co.*, 2013 WL 3803971, at *6 (E.D. Cal. July 19, 2013).

Here, more than the required "two or three factors" can be satisfied to show a unity of interest to withstand a 12(b)(6) motion. *Unichappell Music, Inc.*, 2015 WL 546059, at *4. Most importantly, "because the facts regarding many of the other *Associated Vendors* factors are presumably in defendants' exclusive control, it would be inappropriate for the Court to grant Defendants' motion without allowing Plaintiff an opportunity to obtain discovery as to some other factors" it may consider essential. *Unichappell Music, Inc.*, 2015 WL 546059, at *4 ("the most damning evidence of the 'unity of interest...' is often in the hands of the corporation and its principals and can be found nowhere else"); *Monaco v. Liberty Life Assur. Co.*, 2007 WL 1140460, at *5 (N.D. Cal. Apr. 17, 2007); *Legacy Wireless Servs., Inc. v. Human Capital, L.L.C.*, 314 F. Supp. 2d 1045, 1058 (D. Or. 2004) ("[k]eeping in mind that [defendant] brought its motion under Rule 12(b), the court will not at this early stage hold that [plaintiff] 'beyond doubt' cannot make an **alter**-**ego** showing").

Valeant is the sole owner of Defendants Medicis Pharmaceutical Corporation, Obagi Medical Products, Inc., and Bausch & Lomb Incorporated. Complaint, ¶ 8. As alleged in the Complaint, "Defendants Medicis Pharmaceutical Corporation, Obagi Medical Products, Inc., and Bausch & Lomb Incorporated are subsidiaries of Valeant, and each Defendant is controlled and/or dominated by the others such that all Defendants are alter-egos of each other." *Id.* While "sole ownership alone is often enough to defeat a motion to dismiss," additional factors are also alleged in the

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

complaint. *Pac. Mar. Freight, Inc*., 2010 WL 3339432, at \*7; *Paul v. Palm Springs Homes Inc.*, 192 Cal. App.2d 858, 863 (1961); *Viera v. Chehaiber*, 2010 WL 960347, at \*1 (C.D. Cal. Mar. 16, 2010).  For instance, the factor of "employment of the same employees" is satisfied since Mr. Weinberg has provided services for Medicis, OMP, and Baush & Lomb, as clearly alleged in the Complaint (which also proves that one entity was procuring labor and services for another entity).  *Id.* at  ¶¶ 22 & 25. Further, counsel for Valeant is also the same counsel for the three subsidiaries.  In fact, counsel for Valeant has filed the instant Motion to Dismiss on behalf of the three subsidiaries as well as on behalf of Valeant.  Given that a number of the factors are satisfied, the unity of interest between Valeant and its three subsidiaries is clearly sufficient to meet the alter ego theory of liability.

The second prong of the alter ego liability, the "inequitable result," is also satisfied here for the purposes of a motion to dismiss.  As has been recognized, the circumstances under which the  "inequitable result" is satisfied is quite flexible and courts are now more likely to find the requisite injustice.  Cal. Civ. Prac. Bus. Litig. § 5:10 (citing *Associated Vendors, Inc. v. Oakland Meat Co*., 210 Cal.App.2d 825 (1962)).   While an unhappy circumstance is not sufficient to accomplish and inequitable result, it is sufficient to show "that recognition of the acts as those of a corporation only will produce inequitable results"  *Associated Vendors,* 210 Cal.App.2d at 837.  Inequitable injustice is found to accomplish justice and equity and defeat fraud and unfairness.  *Mesler v. Bragg Management Co.*, 39 Cal. 3d 290, 301 (1985).

Given that Mr. Weinberg was employed at Valeant employee yet he provided services for Medicis, OMP and Bausch & Lomb as well, it would provide a significant injustice for one entity to not pull its weight and be held liable for services they requested.  Mr. Weinberg provided services to Medicis when he first learned of Mr. Alao's Nigerian financial company.  Complaint, ¶ 22.  It was during this time that Mr. Weinberg refused to abide by Mr. Alao's demands and experienced the first instance

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

of hostility from Mr. Alao.  *Id.* at ¶ 22-24.   It was while Mr. Weinberg was performing services for Obaji when Mr. Alao's hostility and intimidation continued. *Id.* at 25-26.   As a result of this intimidation, hostility and retaliatory scheme, Mr. Weinberg suffered a flare up of his Multiple Sclerosis, which included "difficulty with his cognitive abilities, numbness in his appendages, and mobility problems." *Id.* at 27.

Based on the facts alleged in the Complaint, it is clear that the injury caused to Mr. Weinberg occurred while he was providing services to the subsidiaries at different points in time and to allow the subsidiaries to escape liability for the injuries suffered by Mr. Weinberg would be of the exact inequitable injustice the alter ego theory of liability seeks to avoid.   Since the unity of interest between Valeant and the subsidiaries is clear and an inequitable result would occur, the alter ego theory of liability is satisfied.   Thus, the claims against Defendants Medici, OMP, and Bausch & Lomb should not be dismissed.

**B.      Plaintiff's FEHA-Based Claims Should Not Be Dismissed Because Mr. Weinberg Did File an Administrative Complaint with the DFEH Which Was Timely Under the Circumstances.**

Defendants argue that Mr. Weinberg's alleged failure to file an administrative complaint against Defendants with the Department of Fair Employment and Housing (DFEH) and receive a right-to-sue letter from the DFEH should result in the dismissal of Counts 3 through 8 against all Defendants.   However, granting the motion to dismiss on this ground would be inequitable.

California Government Code Section 12960 requires a plaintiff to exhaust the statutory administrative remedies prior to bringing a civil case against a defendant alleging a FEHA violation.  In order to allege a FEHA violation, plaintiff must first file an administrative complaint with the DFEH and obtain a right-to-sue letter.  Cal. Gov. Code §§ 12901, 12930, 12965(b).   Generally, a plaintiff must file the administrative complaint with the DFEH within one year after injury. *Id.* § 12965(b).

Mr. Weinberg filed an administrative complaint with the DFEH on August 5,

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

2015.  On the same day, a right-to-sue letter was issued to Mr. Weinberg.  *See* Exhibit 1 to <u>Declaration of Ben Meiselas</u>.  Although Mr. Weinberg's administrative complaint was not filed with the DFEH until two years after his termination from Valeant in August 2013, this delay was justified given Mr. Weinberg's severe health condition at the time.  Indeed, as alleged in the Complaint, Mr. Weinberg's Multiple Sclerosis severely worsened during his employment and following his termination from Valeant, during which time Mr. Weinberg lost almost all cognitive function and was barely hanging on to his life.

Even though the timely filing of administrative relief is a jurisdictional issue, courts have recognized "equitable exceptions" to the administrative exhaustion requirement.  For example, the timely filing of a DFEH charge has been excused where a DFEH agent has provided inaccurate or misleading advice to a plaintiff through no fault of the plaintiff.  *See, e.g.,* Cal. Code Regs. tit. 2, § 10018 (one-year time limit for filing complaint with DFEH may be tolled where DFEH "misleads the complainant about filing obligations, commits errors in processing the complaint, or improperly discourages or prevents the complainant from filing at all"); *Holland v. Union Pac. R.R. Co.* (2007) 154 Cal.App.4th 940, 947 (equitable tolling applicable where DFEH employee inaccurately told plaintiffs that their timely-filed intake questionnaire was sufficient to make their FEHA claim timely].

Similarly here, the one-year limit to file an administrative claim with the DFEH should be equitably tolled under the circumstances, where Plaintiff's debilitating physical condition **which was exacerbated by Defendants** prevented Mr. Weinberg from filing his administrative claim sooner.  As noted above, the hostile work environment coupled with his sudden and unexpected termination from Valeant and the increased emotional and financial stress led to the sudden worsening of Mr. Weinberg's Multiple Sclerosis.  Just two months after being terminated, on October 2013, MRI results revealed four lesions on Mr. Weinberg's brain, crippling his ability to function.

During the time that Defendants expected Mr. Weinberg to file an administrative complaint, Mr. Weinberg was actually fighting for his life. What Valeant (an entity that should have the utmost empathy for an ill employee) seems to be implying is that instead of taking care of himself for the sake of his young wife, infant son and newborn daughter, Mr. Weinberg should have been filing an administrative complaint. However, Mr. Weinberg's fatal diagnosis – for which he was discriminated against while employed – rendered him incapacitated to file an administrative complaint. The last thing on Mr. Weinberg's mind, while he was suffering from advanced lesions on his brain and fighting for his life, was that the statute of limitations might run. It would normally be shocking, but given the way Valeant treated Mr. Weinberg while he was employed, it is not surprising that Valeant would claim that Mr. Weinberg should have filed his administrative complaint while he was dying. The irony is not lost that Valeant, a pharmaceutical company claiming to care about patients, attempts to argue that that Multiple Sclerosis does not render its victims incapacitated or disabled, a recognition which would have tolled the need for Mr. Weinberg to file an administrative complaint within one year of being terminated by Valeant.

Once Mr. Weinberg regained cognitive function, he retained counsel who filed an administrative complaint on his behalf with the DFEH on August 5, 2015. Upon doing so, Mr. Weinberg received a right-to-sue letter from the DFEH and just one day later, Mr. Weinberg filed the instant Complaint, within the one-year time to do so. Cal. Gov. Code 12965(b). In light of his unique circumstances, Mr. Weinberg should not be punished for failing to file the administrative complaint within one year of his termination from Valeant, since his failure to do so was the caused by his debilitating Multiple Sclerosis. Thus, the Court should acknowledge this equitable exception and hold that the administrative complaint was filed within a timely manner, thereby denying Defendants' motion to dismiss on this ground.

///

**C.    Plaintiff's FEHA-Based Claims Should Not Be Dismissed Because He Sufficiently Alleges that Defendants' Retaliatory and Discriminatory Conduct Originated Within California.**

Plaintiff's FEHA-based claims (Counts 3 through 8) should not be dismissed because Plaintiff alleges facts demonstrating that he was harmed by Defendants' conduct within California.   While FEHA claims are not available to non-residents where the "tortious conduct took place out of this state's territorial boundaries," *Campbell v. Arco Marine, Inc*., 42 Cal.App.4th 1850, 1852 (1996), such claims are available where discriminatory and retaliatory employment decisions are made within California which harm non-resident employees, *see id.* at 1858 (noting that "no one in" an employer's California "headquarters participated in or ratified the [tortious] conduct"); *Gonsalves v. Infosys Technologies, LTD*., No. C 09-04112 MHP, 2010 WL 1854146, at *6 (N.D. Cal. May 6, 2010) (observing that "[i]f California-based employees participated in or ratified the alleged tortious conduct, the complaint must so state with specificity so that the Court can determine if these actions are sufficient to state a claim under FEHA") (citation omitted).

Here, Mr. Weinberg alleges facts demonstrating that he was the victim of discrimination and retaliation originating from Defendants' Irvine, California headquarters for their Obagi subsidiary.   In *Sims v. Worldpac Inc.,* No. C 12-05275 JSW, 2013 WL 663277, at *4 (N.D. Cal. Feb. 22, 2013), the court denied an employer's motion to dismiss an employee's FEHA claims despite the fact that the employee did not reside in California.   The court reasoned that the out-of-state employee sufficiently alleged facts showing that his managers' discriminatory and retaliatory conduct was decided upon and implemented in California and that the employee "does identify the individuals who engaged in the alleged discriminatory and retaliatory conduct . . . and he does more than merely imply that [those individuals] worked in [the employer's] headquarters in Newark, California." *Id.* at *3.

- 15 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

Similarly here, Mr. Weinberg alleges that a specific manager employed by Defendants, namely Jacob Alao, engaged in retaliatory and discriminatory conduct stemming from Mr. Weinberg's refusal to participate in the corruption of the California-based Obagi data. Complaint, ¶¶ 25–26. Just as with the out-of-state residence of the employee in *Sims*, it is immaterial that Plaintiff was living in Arkansas at the time that he "blew the whistle" on the corruption of California-based data belonging to the California-based subsidiary for whom he was working. Mr. Weinberg plainly alleges that he was subjected to intimidating retaliation at the hands of Mr. Alao based on Plaintiff's protected activity involving a California entity. Complaint, ¶ 26. As Defendants' retaliation and discrimination was leveled against Plaintiff as a result of his work for that California entity and his attempts to protect sensitive consumer data within California, Defendants' tortious conduct necessarily arose in California. Accordingly, Defendants' motion to dismiss should be denied as to Plaintiff's FEHA claims.

///

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

## IV.

## CONCLUSION

For the foregoing reasons, Plaintiff Joseph Weinberg respectfully requests that the Court deny Defendants' Motion to Dismiss the Complaint in its entirety.  In the alternative, Plaintiff requests the Court grant leave to amend the initial Complaint. *See Eminence Capital, L.L.C. v. Aspeon, Inc*., 316 F.3d 1048, 1052 (9th Cir. 2003) ("[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment"); *see also Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir. 2001) n. 3 (noting that failure to grant leave to amend can be an abuse of discretion).


DATED:  October 5, 2015                    GERAGOS & GERAGOS, APC


                                           By:   /s/ MARK J. GERAGOS
                                                 MARK J. GERAGOS
                                                 BEN J. MEISELAS
                                                 Attorneys for Plaintiff
                                                 JOSEPH WEINBERG

## PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 644 South Figueroa Street, Los Angeles, California 90017-3411.

On October 5, 2015, I served the foregoing document(s) described as **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS VALEANT PHARMACEUTICALS INTERNATIONAL'S, MEDICIS PHARMACEUTICAL CORPORATION'S, OBAGI MEDICAL PRODUCTS, INC.'S AND BAUSCH & LOMB INCORPORATED'S MOTION TO DISMISS** on the interested parties in this action addressed as follows:

| | |
|---|---|
| Jessica L. Linehan | *Attorneys for Defendants* |
| Jill A. Gutierrez | *VALEANT PHARMACEUTICALS* |
| DORSEY & WHITNEY LLP | *INTERNATIONAL, MEDICIS* |
| 600 Anton Boulevard, Suite 2000 | *PHARMACEUTICAL CORPORATION,* |
| Costa Mesa, CA 92626 | *OBAGI MEDICAL PRODUCTS, INC.* |
| linehan.jessica@dorsey.com | *and BAUSCH & LOMB* |
| gutierrez.jill@dorsey.com | *INCORPORATED* |

Said service was made by placing true copies thereof enclosed in a sealed envelope(s) addressed as stated above AND,

☒ (BY ELECTRONIC TRANSMISSION)  I caused the above-described documents to be filed with the Central District of California's CM/ECF system. All participants in this case are registered with the Central District of California's CM/ECF system and are served thereby.

☐ Depositing the sealed envelope with the United States Postal Service with the postage fully prepaid.

☐ Placing the envelope for collection and mailing on the date and at our business address following our ordinary business practices.  I am readily familiar with this business's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

Executed on October 5, 2015 at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

/s/ MARK J. GERAGOS
MARK J. GERAGOS