GERAGOS & GERAGOS
A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 625-3900
FACSIMILE (213) 232-3255
GERAGOS@GERAGOS.COM

BEN J. MEISELAS          SBN 277412
ALEX ALARCON            SBN 305537
Attorneys for Plaintiff JOSEPH WEINBERG

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH WEINBERG, an individual;<br><br>Plaintiff,<br><br>vs.<br><br>VALEANT PHARMACEUTICALS NORTH AMERICA, LLC, a Delaware corporation; and DOES 1 through 50, inclusive;<br><br>Defendants. | Case No.: 8:15-cv-01260-DOC-KES<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT VALEANT PHARMACEUTICALS NORTH AMERICA, LLC'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>*Assigned for all purposes to the Hon. Karen E. Scott*<br><br>*[Concurrently filed with Plaintiff's Statement of Genuine Disputes of Material Facts, Declaration of Alex Alarcon, and Declaration of Plaintiff Joseph Weinberg]*<br><br>Date:      August 8, 2017<br>Time:     10:00 a.m.<br>Room:    6D<br><br>Action Filed: August 6, 2015<br>Trial Date: October 10, 2017 |

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

# **TABLE OF CONTENTS**

I.      INTRODUCTION…………………………………………………………..1

II.     STATEMENT OF FACTS……………………………………………………1

III.    LEGAL STANDARD …………………………………………………..6

IV.     ARGUMENT…………………………………………………………………7

  A. Both Intentional Infliction of Emotional Distress and Negligent Infliction of
     Emotional Distress are Timely. Alternatively, They should be Considered
     Timely Because Plaintiff Joseph Weinberg Lacked the Legal Capacity to
     Make Decisions……………………………………………………………7

  B. The Conduct of Jacob Alao, While Employed at Valeant, Was Extreme and
     Outrageous to a Reasonable Person………………………………………10

  C. Plaintiff Joseph Weinberg's Claim for Negligent Infliction of Emotional
     Distress is Not Preempted by Worker's Compensation Exclusivity………...11

  D. Plaintiff Joseph Weinberg was Subjected to Negligent Conduct by Defendant
     Valeant……………………………………………………………………12

  E. California Labor Code §1102.5 Should Apply Extraterritorially Because of
     Plaintiff's Direct Effect on California and California Locations……………13

  F. California Labor Code § 1102.5 Should Apply Retroactively Because of the
     Strong Public Policy Implications of Allowing Employees to Report Illegal
     Activity by their Employers………………………………………………14

  G. The Conduct by Defendant Valeant Against Plaintiff Joseph Weinberg is
     Clearly Retaliatory………………………………………………………...15

V.      CONCLUSION………………………………………………………...17

**GERAGOS & GERAGOS, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

# **TABLE OF AUTHORITIES**

**Case Law**

*Alcott Rehab. Hosp. v. Superior Court,*
93 Cal.App.4th 94 (2001)……………………………………………8, 9

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)……………………….................................6, 7

*Cochran v. Cochran,*
65 Cal.App.4th 488 (1998)……………………………………………10

*Collier v. Superior Court,*
228 Cal. App. 3d 1117 (1991)………………...................................15

*Cotter v. Lyft, Inc.,*
60 F.Supp.3d 1059 (N.D. Cal. 2014)…………………………………14

*Delfino v. Agilent Techs., Inc.,*
145 Cal.App.4th 790 (2006)…………………………………………12

*Feeley v. S. Pac. Transp. Co.,*
234 Cal.App.3d 949 (1991)……………………………………………7

*First Nat. Bank of Ariz. v. Cities Services Co.,*
391 U.S. 253 (1968)……………………………………………………6

*Fretland v. Cty. of Humboldt,*
69 Cal.App.4th 1478 (1999)…………………………………………11

*Green v.Ralee Eng'g Co.,*
19 Cal.4th 66 (1998)………………………………………………...15

*Hart v. Nat'l Mortg. & Land Co.,*
189 Cal.App.3d 1420 (1987)………………………………………11, 12

*Horn v. Bradco Internat., Ltd.,*
232 Cal.App.3d 653 (1991)…………………………………………11

*Hughes v. Pair,*
46 Cal.4th 1035 (2009)…………………………………………...10

*Kiseskey v. Carpenters' Trust for So. California,*
144 Cal.App.3d 222 (1983)…………………………………………10

*Livitsanos v. Superior Court,*
2 Cal.4th 744 (1992)…………………………………………………11

*McClung v. Employment Dev. Dep't,*
34 Cal.4th 467 (2004)………………………………………………14

*McVeigh v. Recology San Francisco,*
213 Cal.App.4th 443 (2013)………………………………………...14

*Mokler v. Cty. of Orange,*
157 Cal.App.4th 121 (2007)………………………………………...16

*Nat'l R.R. Passenger Corp. v. Morgan,*
536 U.S. 101 (2002)……………………………………………...16

*Pearl v. Pearl*,
    177 Cal. 303 (1918)…………………………………………………...…7, 8
*Pugliese v. Superior Court*,
    146 Cal.App.4th 1444 (2007)…………………………………………..7
*Sullivan v. Oracle Corp.*,
    51 Cal.4th 1191 (2011)………………………………………………...14
*Symonds v. Mercury Sav. & Loan Assn.*,
    225 Cal.App.3d 1458 (1990)…………………………………………..10
*Tolan v. Cotton*,
    134 S. Ct. 1861(2014)………………………………………………..6, 7
*Tzolov v. Int'l Jet Leasing, Inc.*,
    232 Cal.App.3d 117 (1991)……………………………………………8, 9
*Weinstock v. Eissler*,
    224 Cal.App.2d 212 (1964).....................................................................9
*Yanowitz v. L'Oreal USA, Inc.*,
    36 Cal.4th 1028 (2005)………………………………………………...16

## Statutory Authority

Fed. R. Civ. P. 56 ....................................................................................... 6

Cal. Code of Civ. Proc. § 335.1 ................................................................. 7

Cal. Code of Civ. Proc. § 352 .................................................................... 7

Cal. Lab. Code § 1102.5 ...................................................................... 14, 15

**GERAGOS & GERAGOS, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

- iii -

**TABLE OF AUTHORITIES**

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

Plaintiff Joseph Weinberg, husband and father, is an infrastructure engineer by trade who maintains an advanced skillset. Unfortunately, Multiple Sclerosis is a debilitating condition that has taken over Mr. Weinberg's life. One would expect Defendant Valeant, a nationally renowned pharmaceutical company, and its subsidiaries to acknowledge the debilitating symptoms of this incurable disease.  But not only has Mr. Weinberg become victim to this awful disease, he has also fallen victim to his former employer Valeant's monstrous denial of sympathy.  Shortly after beginning his employment there, the severe stress caused by Valeant's corporate culture and the unlawful orders given by Mr. Weinberg's managers caused him to experience physical manifestations of his Multiple Sclerosis. When Mr. Weinberg approached Valeant's Director of Human Resources to report the hostile work environment and discuss making accommodations due to his health, Mr. Weinberg was terminated.

However, as explained below, Defendants' motion should be denied.

## II.  STATEMENT OF FACTS

Mr. Weinberg was first diagnosed with multiple sclerosis in 2009. Declaration of Joseph Weinberg ("Weinberg Decl."), ¶ 9. Since that time, he has suffered to varying degrees from his illness, including headaches, vision issues, and decreases in his cognitive abilities. *Id*. Regardless of this debilitating condition, Mr. Weinberg continues to work in order to support his family.

Beginning in March 2013, Valeant interviewed Mr. Weinberg over multiple months for a potential employment position to direct Valeant's IT infrastructure.  The position would require Mr. Weinberg to perform services for Valeant and its subsidiaries. Valeant recognized Mr. Weinberg's extraordinarily advanced skillset and concluded its six-month nationwide search to fill this position by offering Mr. Weinberg the Senior Converged Infrastructure Engineer job. Mr. Weinberg indicated in his employment application that he would not be willing to relocate. Declaration of

**GERAGOS & GERAGOS, APC**
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

Alex Alarcon ("Alarcon Decl."), ¶ 4, Exh. "C."

Mr. Weinberg began his employment at Valeant in May 2013 where he worked under the supervision of IT engineering directors Jacob Alao and Steve Schiavone. Weinberg Decl., ¶ 4; Alarcon Decl., ¶ 2, Exh. "A," Deposition of Joseph Weinberg ("Weinberg Depo."), 34:15-20. Mr. Weinberg was located in Scottsdale, Arizona, but worked on a number of financial and infrastructure systems based in California, New Jersey, and Canada. Weinberg Decl., ¶ 2. At the beginning of his employment, Mr. Weinberg communicated information regarding his illness and mental condition to his employer, including his immediate supervisors. Weinberg Depo., 113:16-25. In fact, Mr. Weinberg even noted his multiple sclerosis as a disability on his employee intake form. Alarcon Decl., ¶ 6, Exh. "E." He was assigned to work on a variety of different IT-related projects for Valeant's numerous subsidiaries. However, he was soon subjected to a hostile work environment and given unlawful orders by his managers including Mr. Weinberg's direct supervisor, Jacob Alao. Weinberg Decl., ¶ 6.

Approximately one month into Mr. Weinberg's employment at Valeant, at which time he was assigned to perform services for Defendant Medicis Pharmaceutical Corporation ("Medicis"), Mr. Alao visited Scottsdale, Arizona to meet with Mr. Weinberg. During this visit, Mr. Alao told Mr. Weinberg that he had his own Nigerian financial company called Mongran Financial ("Mongran"), and that Valeant and Mr. Alao's prior employers had helped start Mongran.

Knowing that Mr. Weinberg had access to Valeant's confidential financial databases, Mr. Alao asked Mr. Weinberg if he wanted to help "do business" at Valeant by providing access to those systems. Weinberg Decl., ¶ 4, 6; Weinberg Depo., 69:2-70:7. Mr. Weinberg refused to help Mr. Alao, recognizing that providing access to private financial systems was a violation of the Sarbanes-Oxley Act and Payment Card Industry security standards, and that these illegal operations exposed Valeant to substantial liability. Weinberg Decl., ¶ 6. Mr. Weinberg refused to comply with Mr. Alao's demands and never provided access to this information to anyone.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

- 2 -

Weinberg Decl., ¶ 7; Weinberg Depo., 72:1-2.

Mr. Alao's other inappropriate conduct was alarming as well. Mr. Alao instructed and insisted that Mr. Weinberg perform data migration in manners that fell below industry standards and, in Mr. Weinberg's extensive experience, would cause the data to become corrupt. Weinberg Decl., ¶ 5. When Mr. Weinberg voiced these concerns to Mr. Alao, he insisted and demanded that Mr. Weinberg proceed anyway, going so far as to remotely log-in to Mr. Weinberg's active computer session, take control of his mouse, and make changes to the system to ensure corruption and data loss. Weinberg Decl., ¶ 6. Mr. Alao corrupted the data to the point where it became completely unusable. *Id.*

Mr. Alao became hostile towards Mr. Weinberg after Mr. Weinberg refused to comply with his illegal orders regarding the Mongran and Obagi matters. Weinberg Decl., ¶ 5; Weinberg Depo., 72:12-73:22. For example, Mr. Alao would intimidate and tell Mr. Weinberg the "bloody" things that he would do such as fire people for "the fun of the bloodsport," how Valeant would conduct hostile takeovers of companies and ruin the lives of the preexisting staff by giving them termination dates, and how he found it funny that the girlfriend of Jonah Shacknai, the founder of Medicis, committed suicide by hanging herself while naked from Mr. Shacknai's balcony. Weinberg Decl., ¶ 5; Weinberg Depo., 133:6-11; 72:12-73:22. Mr. Alao's retaliatory campaign increased in severity over time. Moreover, Mr. Alao subjected Mr. Weinberg to various levels of exclusion and threats, including purposefully positioning himself away from Mr. Weinberg in the shared office space. Weinberg Decl., ¶ 4. Furthermore, Mr. Alao made false promises to Mr. Weinberg regarding relocation from Arizona to New Jersey. Weinberg Depo., 164:10-15. However, Mr. Weinberg was later told by Mr. Schiavone that there would be no relocations. Weinberg Decl., ¶ 7. Mr. Schiavone even stated to Mr. Weinberg that he should find alternative employment. Weinberg Depo., 137:11-14. No employee at Valeant made any effort to correct Mr. Alao's conduct after Mr. Weinberg reported it. Weinberg

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

1   Depo., 79:2-15.  Mr. Schiavone even revealed to Mr. Weinberg that Mr. Schiavone
2   was unable to control Mr. Alao. Weinberg Decl., ¶ 7.

3          The escalating severity and resulting effects of Mr. Alao's intimidating and
4   retaliatory conduct caused the debilitating effects of Multiple Sclerosis to take their
5   toll on Mr. Weinberg.  Mr. Weinberg began to experience difficulty with his cognitive
6   abilities, numbness in his appendages, and mobility problems, all of which signaled
7   that he was suffering brain and spinal column damage. Weinberg Decl., ¶ 11.  Mr.
8   Weinberg therefore approached Alison Brunger, Valeant's Director of Human
9   Resources, to discuss making certain accommodations due to his health so that Mr.
10  Weinberg could continue to work for Valeant. However, Valeant never responded to
11  Mr. Weinberg's complaints.

12         Mr. Weinberg's health continued to decline, and in August 2013, Mr. Weinberg
13  again contacted Ms. Brunger in order to discuss accommodations. Mr. Weinberg
14  informed Ms. Brunger of his failing health and the hostile and stressful work
15  environment. On August 4, 2013 at 9:41 p.m., Mr. Weinberg emailed Ms. Hardgrove
16  regarding his employment status, including information regarding his worsening
17  health condition. Alarcon Decl., ¶ 5, Exh. "D." In less than twelve hours, Ms.
18  Hardgrove replied stating that a severance package was already created for Mr.
19  Weinberg. *Id*.; Alarcon Decl., ¶ 7, Exh. "F," Deposition of Elizabeth Geary ("Geary
20  Depo."), 124:16-23. Ms. Hardgrove presented a full separation agreement to Mr.
21  Weinberg on August 5, 2013. Weinberg Decl., ¶ 8. Rather than discussing
22  accommodations so that Mr. Weinberg could get treatment, Valeant terminated Mr.
23  Weinberg's employment at its first opportunity because, in Mr. Weinberg's
24  perception, for reporting the conduct of Mr. Alao. *Id*. Moreover, Mr. Weinberg had
25  stated on his application for employment that he was unwilling to relocate. Alarcon
26  Decl., ¶ 4, Exh. "C." Furthermore, Valeant's human resources PMK stated that if an
27  employee was being asked to relocate and they refused, it was essentially deemed as
28  involuntary separation. Geary Depo., 19:8-18. Lastly, while Valeant claims that no

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

- 4 -

employees remain in Scottsdale, Arizona, Valeant actually hired an employee to remain in Arizona after Mr. Weinberg's termination. Alarcon Decl., ¶ 3, Exh. "B" ("Muir Depo."), 16:13-17:9. Mr. Muir was hired despite the closure of the Arizona office. *Id*; Geary Depo., 37:25-38:5.

On August 5, 2013, Mr. Weinberg accepted a contractor position with DataShield. Weinberg Depo., 195:12-196:6. In fact, Mr. Weinberg only sought employment with DataShield because, while working at Valeant, Mr. Weinberg's supervisor, Mr. Schiavone, told him to secure other employment. Weinberg Decl., ¶ 12. The position with DataShield was supposed to be for four (4) weeks. *Id*. However, Mr. Weinberg did not work for the contracted period. *Id*. Mr. Weinberg, after starting, quickly realized that he was completely unable to perform his job duties. *Id*. On the advice and counsel of his wife, Mr. Weinberg resigned his position with DataShield. Weinberg Decl., ¶ 12. Mr. Weinberg remained unemployed until April 2014. Weinberg Decl., ¶ 13.

At the same time, Mr. Weinberg's Multiple Sclerosis worsened and diminished his cognitive ability even further. *Id*. Mr. Weinberg was mentally incapacitated during this time, sleeping for at least fourteen (14) hours per day. *Id*. Furthermore, Mr. Weinberg was unable to secure or perform any work during this time. *Id*. All familial and financial decisions were made by Mr. Weinberg's wife during this time. *Id*. Mr. Weinberg was forced to sell his house, car, and stocks, as well as cash out his 401k in order to live, particularly since he and his wife were expecting their second child. Weinberg Decl., ¶ 13, 14.

An MRI in October of 2013 revealed four lesions on Mr. Weinberg's brain, crippling his ability to function, despite his young age, as well as his ability to find another job. Mr. Weinbeg's therapist stated that Mr. Weinberg had become severely depressed and "reported feeling overwhelmed with an inability to cope with any responsibility." Weinberg Decl., ¶ 10, Exh. "A." Sadly, the long-lasting mental and physical pain inflicted upon Mr. Weinberg's as a result of the stressful environment at

- 5 -

Valeant was so great that he contemplated suicide. Thankfully, he decided against taking his own life.

The Weinberg family then moved to Utah with Mr. Weinberg's in-laws so that Mr. Weinberg could focus on healing. Weinberg Decl., ¶ 14. Early in 2014, Mr. Weinberg was prescribed Rituxan from the Barrow Neurological Institute. When Mr. Weinberg attempted to receive treatment, Valeant's COBRA insurance denied coverage, thus preventing Mr. Weinberg from receiving this life-saving treatment, which he could not otherwise afford. Mr. Weinberg was prescribed Tysabri instead, which has a high and potentially fatal risk of brain damage, because it was covered by Valeant's COBRA insurance.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure, rule 56 authorizes a court to grant a motion for summary judgment if the moving party shows that there is no genuine issue of material fact and the party is entitled to judgment as matter of law. Fed. R. Civ. P. 56. There is no requirement that the judge make a finding of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Only disputes over facts which might affect the outcome of the case will properly preclude summary judgment. *Id*. at 248. A party opposing a motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 248-49.

To survive a motion for summary judgment, the nonmoving party must establish that there is a genuine issue of material fact as to whether Defendants violated federal and state law. Fed. R. Civ. P. 56(e); *see also First Nat. Bank of Ariz. v. Cities Services Co.*, 391 U.S. 253, 288-89 (1968). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" *Cities Service*, 391 U.S. at 289 (emphasis added). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Id*. However, "in ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed,

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

1   and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 134 S. Ct.

2   1861, 1863 (2014) (citing *Anderson*, 477 U.S. 242 at 255 (1986)).

3       Lastly, the judge must not make determinations regarding the weight of

4   evidence. *Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the

5   evidence, and the drawing of legitimate inferences from the facts are jury functions,

6   not those of a judge, whether he is ruling on a motion for summary judgment or for a

7   directed verdict.").

8   **IV.   ARGUMENT**

9          **A.   Both Intentional Infliction of Emotional Distress and Negligent
              Infliction of Emotional Distress are Timely. Alternatively, They
10             Should be Considered Timely Because Plaintiff Joseph Weinberg
              Lacked the Legal Capacity to Make Decisions.**
11
12      Plaintiff Joseph Weinberg's claims for Intentional Infliction of Emotional

13  Distress ("IIED") and Negligent Infliction of Emotional Distress ("NIED") were

14  timely brought. However, if these claims were brought outside the statute of

15  limitations, both should be allowed to continue based on the fact that Mr. Weinberg

16  lacked the legal capacity to make decisions on his own behalf for a number of months

17  after he left Valeant's employ. Because of Mr. Weinberg's inability to make decisions

18  about his rights, the Court should deny Defendant's motion for summary judgment

19  based on the applicable statute of limitations.

20      Causes of action for IIED and NIED are subject to the two year statute of

21  limitations set forth in California Code of Civil Procedure, section 335.1. Cal. Civ.

22  Proc. § 335.1; see also *Pugliese v. Superior Court*, 146 Cal.App.4th 1444, 1450

23  (2007). However, the statute of limitations governed by this section can be tolled for a

24  period of time when a person lacks the legal capacity to make decisions. Cal. Civ. Pro.

25  § 352(a); see also *Feely v. S. Pac. Transp. Co.*, 234 Cal.App.3d 949, 952 (1991) (The

26  relevant statute of limitations should be tolled when there is "some mental condition

27  which renders the plaintiff incapable.") A plaintiff will be deemed disabled for the

28  purposes of section 352 through a "finding that he was incapable of caring for his

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

- 7 -

property or transacting business or understanding the nature or effects of his acts." *Pearl v. Pearl*, 177 Cal. 303, 307 (1918); *see also Alcott Rehab. Hosp. v. Superior Court*, 93 Cal.App.4th 94, 201 (2001). Thus, "the period of the statute of limitations applicable to the incompetent's action for the injuries will not begin so long as the incompetence continues." *Tzolov v. Int'l Jet Leasing, Inc.*, 232 Cal.App.3d 117, 118 (1991).

Here, Mr. Weinberg began to suffer from severe emotional distress starting in June 2013. During this employment, he suffered from depression and severe headaches. Mr. Weinberg even began to notice a decrease in his cognitive abilities. However, he continued to provide for his family by working at Valeant. When Mr. Weinberg was terminated on August 5, 2013, he was almost completely unable to work because of the emotional distress caused to him by Alao's acts and the termination. On August 5, 2013, Plaintiff sought alternative employment with DataShield. Mr. Weinberg was officially employed for four (4) weeks. However, Mr. Weinberg did not work for that entire period of time at DataShield. After starting at DataShield, Mr. Weinberg quickly realized that he was completely unable to perform his job duties. Mr. Weinberg's emotional distress and decrease in cognitive abilities made it impossible for him to perform any duties at DataShield and he promptly resigned his position based on the advice and counsel of his wife. After leaving DataShield, Mr. Weinberg became a husk of his former self. During this time, he slept for fourteen hours per day and was unable to participate in any family decisions. He was unable to secure employment, and even if he could, he was unable to perform that work. During this time, all financial and familial decisions were made solely by his wife. In fact, Mr. Weinberg was not involved in the decision to sell his family's Arizona home and move in with his wife's parents in Utah. In a January 2014 letter, Mr. Weinberg's therapist stated that Mr. Weinberg had become severely depressed and "reported feeling overwhelmed with an inability to cope with any responsibility." Essentially, from August 5, 2013 to April 2014, Mr. Weinberg participated in no

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

1   decisions toward the management of his family and financial affairs.

2        Undoubtedly, Mr. Weinberg was suffering from severe emotional distress from

3   June 2013 to April 2014. The stress from his interactions with Mr. Alao, plus his

4   stress from his illness and responsibility to his family, came to an apex when he was

5   terminated on August 5, 2013. Therefore, the date of Mr. Weinberg's termination is

6   the date of his mental and emotional breakdown. In this situation, the court in

7   *Weinstock v. Eissler* held that:

8        Where the condition of insanity results directly from, an occurs on the
         same day, as the wrongful act or neglect which is the basis of the action,
9        the two events are *legally* simultaneous since the law disregards fractions
         of days and the statute of limitations will not be deemed to have
10       commenced running prior to the occurrence of the condition of insanity.

11       *Weinstock v. Eissler*, 224 Cal.App.2d 212, 232 (1964) (emphasis in original).

12       Clearly, Mr. Weinberg was not capable of making any serious decisions about

13  his legal rights during this time. Mr. Weinberg was unable to work and unable to

14  make any serious decisions regarding his family. Instead, Mr. Weinberg moved day to

15  day without any ability to consider his situation or any applicable solution. While Mr.

16  Weinberg was able to significantly recover by April 2014, a disability undoubted

17  occurred between August 5, 2013 and April 2014. Furthermore, the fact that Mr.

18  Weinberg's wife was not incapacitated does not affect his legal rights. *See Alcott*

19  *Rehab. Hosp. v. Superior Court*, 93 Cal.App.4th 94, 101 n.8 (rejecting the notion that

20  the statute of limitations was not tolled because another person directed plaintiff's

21  medical care and had a power of attorney); *see also Tzolov*, 232 Cal.App.3d at 120

22  (holding that tolling of the statute of limitations refers to the competence of the

23  plaintiff and not the fact that a guardian ad litem was appointed).

24       Since Mr. Weinberg was essentially incapacitated for eight (8) months, any

25  statute of limitations should be tolled.

26  ///

27  ///

28  ///

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

- 9 -

**B.    The Conduct of Jacob Alao, While Employed at Valeant, Was Extreme and Outrageous to a Reasonable Person.**

Plaintiff Joseph Weinberg is clearly a victim of IIED and the conduct performed by Jacob Alao, while both Mr. Weinberg and Mr. Alao were employees of Valeant, constitute extreme and outrageous behavior under an objective standard.

A cause of action for IIED requires a showing of "extreme and outrageous conduct by the defendant." *Hughes v. Pair*, 46 Cal.4th 1035, 1050 (2009). Generally, conduct is so outrageous when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community" *Id.* at 1051. Behavior may be considered outrageous when a defendant "knows the plaintiff is susceptible to injuries through mental distress" or "acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress." *Kiseskey v. Carpenters' Trust for So. California*, 144 Cal.App.3d 222, 230 (1983); *see also Cochran v. Cochran*, 65 Cal.App.4th 488, 494 (1998) ("That the defendant knew the plaintiff had a special susceptibility to emotional distress is a factor which may be considered in determining whether the alleged conduct was outrageous."); *see also Symonds v. Mercury Sav. & Loan Assn.*, 225 Cal.App.3d 1458, 1469 (1990). Lastly, multiple events can be considered together as a course of conduct in determining whether the conduct is outrageous. *Kiseskey*, 144 Cal.App.3d at 229.

Plaintiff suffers from multiple sclerosis as well as mood and behavior problems. Plaintiff communicated information regarding his illness and mental condition to his employer Valeant Pharmaceuticals, including his immediate supervisors. Mr. Weinberg even documented this fact on his employee intake forms when he was first hired. Despite this knowledge of Mr. Weinberg's mental condition, Mr. Alao made threatening comments to Mr. Weinberg which Mr. Weinberg believed to be in retaliation for not providing illegal access to databases. These comments indicated to Mr. Weinberg that Mr. Alao enjoyed the "sport" of firing individuals. Furthermore, Mr. Alao insinuated to Mr. Weinberg that Valeant was involved with the tragic event involving the owner of Medicis. These statements by Mr. Alao, coupled with Mr.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

Weinberg's multiple sclerosis and history of depression, constitute outrageous conduct of behalf of Defendant. Mr. Alao made these comments while working for Valeant and while at Valeant's Arizona location.

Given Mr. Weinberg's preexisting condition and susceptibility to emotional distress, a reasonable person, with the same conditions as Mr. Weinberg would clearly determine that the statements were extreme and outrageous. Therefore, Defendant's motion for summary judgment should be denied.

**C.**  **Plaintiff Joseph Weinberg's Claim for Negligent Infliction of Emotional Distress is Not Preempted by Worker's Compensation Exclusivity.**

Plaintiff's claim for NIED falls outside of worker's compensation exclusivity based solely on the fact that the conduct which subjected Mr. Weinberg to such emotional distress is clearly outside the bounds of a normal employment relationship.

Generally, a claim of negligent infliction of emotional distress ("NIED") against an employer is preempted by Worker's Compensation exclusivity. *Horn v. Bradco Internat., Ltd.*, 232 Cal.App.3d 653, 665 (1991). However, a claim may be exempt from the exclusivity rule. *Hart v. Nat'l Mortg. & Land Co.*, 189 Cal.App.3d 1420, 1427-28 (1987); *see also Livitsanos v. Superior Court*, 2 Cal.4th 744, 756 (1992). To determine if a NIED claim is not preempted by the exclusivity rule, the court must focus on whether the employer's conduct was "either outside of the employer's proper role or of questionable relationship to the employment," instead of a normal part of, or related to, the employment relationship. *Horn*, 232 Cal.App.3d at 670; *see also Hart*, 189 Cal.App.3d at 1430. In *Fretland v. County of Humboldt*, the court found that the defendant's misconduct, including harassment and discrimination against plaintiff, exceeded the normal risks of the employment relationship. *Fretland v. Cty. of Humboldt*, 69 Cal.App.4th 1478, 1492 (1999). Additionally, in *Hart*, the court found that the defendant's conduct (e. g., making sexually suggestive gestures, accompanied by crude remarks, among other deplorable conduct) had "a questionable relationship to employment, and were neither a risk, an incident, nor a normal part of Hart's

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

- 11 -

employment." *Hart*, 189 Cal.App.3d at 1430. Furthermore, the *Hart* court held that the employer could be charged with knowledge of the acts considering that the plaintiff reported the conduct and the employer failed to take action against the conduct. *Id.*

In this case, Mr. Alao's conduct was far beyond the bounds of the employment relationship and Valeant assented to Mr. Alao's conduct by failing to take any action. As stated above, Mr. Alao made numerous threatening comments to Mr. Weinberg. These comments included the fact that Mr. Alao found enjoyment in firing individuals and that Valeant was somehow involved in tragic events with respect to the owner of Medicis. Furthermore, no employee at Valeant made any effort to correct Mr. Alao's conduct after Mr. Weinberg reported it. Since this conduct was outside of the employer's proper role and not related to his employment at all, Mr. Weinberg's claim is not preempted by worker's compensation exclusivity.

### D. Plaintiff Joseph Weinberg was Subjected to Negligent Conduct by Defendant Valeant.

Defendant contends that there is only intentional conduct between Mr. Weinberg and Valeant. However, this contention misconstrues the facts regarding the conduct of Mr. Alao toward Mr. Weinberg and Valeant's failure to take any action to rectify Mr. Alao's reprehensible conduct.

It is well settled in California that an employer may be liable for the negligence of its employees. *Delfino v. Agilent Techs., Inc.*, 145 Cal.App.4th 790, 812 (2006). Liability can be found so long as the tort is committed within the scope of the employment. *Id.* Additionally, the "[s]cope of employment in the application of the respondeat superior doctrine has been given a broad construction." *Id.* Moreover, the fact that an employee is "not engaged in the ultimate object of his employment at the time of his wrongful act does not preclude attribution of liability to an employer." *Id.* (internal citations omitted). Even if the employee is combining his own business with that of the employer, there is no analysis of what business the employee was engaged at the time of the tortious conduct unless it is clear that he could not have been serving his employer at the time. *Id.*

- 12 -

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

Defendant assumes that the only conduct that could have caused emotional distress to Mr. Weinberg stems from his termination by Valeant. However, this is far from the truth. In fact, Mr. Weinberg was subjected to emotional distress while he was still employed at Valeant. In June 2013, Mr. Alao, an employee of Defendant at all relevant times, requested that Mr. Weinberg engage in illegal acts while at the Arizona location. Mr. Weinberg declined to participate in any illegal activity with Mr. Alao. Because of Mr. Weinberg's rejection of Mr. Alao's offer, Mr. Alao subjected Mr. Weinberg to various levels of exclusion and threats. Mr. Alao purposefully positioned himself away from Mr. Weinberg in the shared office space. Mr. Alao also made comments to Mr. Weinberg regarding the enjoyment Mr. Alao received from firing individuals. Mr. Alao also stated to Mr. Weinberg that the owner of Medicis had sold his company to Valeant only after a personal tragedy occurred. Further, Mr. Alao insinuated that Valeant was involved in the murder-suicide. This conduct by Mr. Alao occurred while at Valeant's Arizona office. Furthermore, the conduct is not so clearly separated from the business of Defendant as Mr. Alao was employed by Valeant at the time the conduct occurred and many of the comments were made regarding Valeant business. Lastly, Mr. Weinberg declined Mr. Alao's offer to engage in illegal activity regarding Valeant systems and Mr. Weinberg's administrator level access to these systems.

Since none of the conduct between Mr. Weinberg and Mr. Alao was a part of a normal business relationship, worker's compensation exclusivity should not apply and, therefore, summary judgment should be denied.

**E.    California Labor Code § 1102.5 Should Apply Extraterritorially Because of Plaintiff's Direct Effect on California and California Locations.**

The presumption against extraterritoriality in California statutes is not absolute and has been left open for later courts to decide. Plaintiff contends that this Court should find that section 1102.5 should apply to Plaintiff's relationship with his employer because of the direct effects that Plaintiff's work had on California and

**MEMORANDUM OF POINTS AND AUTHORITIES**

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

California locations.

California courts have found that there is a presumption against extraterritorial application of California employment laws. *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1207 (2011). However, the California Supreme Court left open the possibility that California employment laws may be enforced in California in limited circumstances. *Cotter v. Lyft, Inc.*, 60 F.Supp.3d 1059, 1062 (N.D. Cal. 2014).

Defendant is unable to cite to any California, or related federal, case which explicitly states that California Labor Code, section 1102.5 cannot apply outside of California. While the presumption is strong, it is not absolute. While Mr. Weinberg was a resident of Arizona at all relevant times, he performed significant work for companies in California. His work included constant remote work which had a direct effect on California servers and databases. Based upon this work, Mr. Weinberg's claims should be subject to the California Labor Code.

## F.   California Labor Code § 1102.5 Should Apply Retroactively Because of the Strong Public Policy Implications of Allowing Employees to Report Illegal Activity by Their Employers.

There is a clear public policy in favor of supporting employees when their employers engage in illegal or immoral behavior. Based on this public policy, this Court should apply section 1102.5 retroactively.

In California, "[a] statute has retrospective effect when it substantially changes the legal consequences of past events." *McClung v. Employment Dev. Dep't*, 34 Cal.4th 467, 472 (2004). Furthermore, if there is no express language in the statute allowing for retroactivity, the statute may still apply retroactively if other sources provide a clear implication that the Legislature intended retroactive application. *Id.* at 475.

While California Labor Code, section 1102.5 does not expressly allow for retroactivity, there is a strong public policy in favor of retroactivity. California's general whistleblower statute maintains a "broad public policy interest in encouraging workplace whistle-blowers to report unlawful acts without fearing retaliation."

- 14 -

*McVeigh v. Recology San Francisco*, 213 Cal.App.4th 443, 468 (2013). While the employee in *Green v. Ralee Engineering Co.* was unable to bring a retaliation claim on other grounds, the California Supreme Court found that section 1102.5 "does show the Legislature's interest in encouraging employees to report workplace activity that may violate important public policies that the Legislature has stated." *Green v.Ralee Eng'g Co.*, 19 Cal.4th 66, 77 (1998). Furthermore, the California Supreme Court recognized that the "Legislature believes that fundamental public policies embodied in regulations are sufficiently important to justify encouraging employees to challenge employers who ignore those policies." *Id*.

> If public policy were strictly circumscribed by this statute to provide protection from retaliation only where employees report their reasonable suspicions directly to a public agency, a very practical interest in self preservation could deter employees from taking any action regarding reasonably founded suspicions of criminal conduct by coworkers. Under that circumstance, an employee who reports his or her suspicions to the employer would risk termination or other workplace retaliation. If this employee makes a report directly to a law enforcement agency, the employee would be protected from termination or other retaliation by the employer under Labor Code section 1102.5, but would face an obvious disruption of his or her relationship with the employer, who would be in the unfortunate position of responding to a public agency without first having had an opportunity to deal internally with the suspected problem. These discouraging options would leave the employee with only one truly safe course: do nothing at all.

*Collier v. Superior Court*, 228 Cal. App. 3d 1117, 1123–24 (1991).

Based on the Legislature's recognized desire to empower employees to report the illegal activity of employers, Plaintiff contends that the amendment to section 1102.5 (which was enacted only 2 months after Plaintiff left his position at Valeant) should apply retroactively.

### G.   The Conduct by Defendant Valeant Against Plaintiff Joseph Weinberg is Clearly Retaliatory.

Defendant once again misconstrues the facts in an attempt to cast itself in a better light. However, the facts show that Defendant clearly participated in activity

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

1  which is retaliatory against Plaintiff.

2      To establish a case of retaliation a plaintiff must show that (1) he engaged in a

3  protected activity, (2) that his employer subjected him to an adverse employment

4  action, and (3) a causal link between the first two elements. *Mokler v. Cty. of Orange*,

5  157 Cal.App.4th 121, 138 (2007). Furthermore, a series of separate acts may be

6  considered collectively to constitute one "unlawful employment practice." *Yanowitz v.*

7  *L'Oreal USA, Inc.*, 36 Cal.4th 1028, 1057 (2005) (citing *Nat'l R.R. Passenger Corp.*

8  *v. Morgan*, 536 U.S. 101, 103 (2002)).

9      Once again, Defendant attempts to misconstrue the facts. First, the promise of

10  relocation was only given by Mr. Alao, who was not Mr. Weinberg's direct

11  supervisor. Second, Mr. Weinberg's direct supervisor, Steve Schiavone, stated flatly

12  that there were to be no relocations. Mr. Schiavone even stated to Mr. Weinberg that

13  Plaintff should find alternative employment as an insurance policy. Further proof of

14  the fact that Mr. Weinberg was not a candidate for relocation can be found in a

15  response from Alison Hardgrove, Mr. Weinberg's human resources representative. On

16  August 4, 2013 at 9:41 p.m., Mr. Weinberg emailed Ms. Hardgrove regarding his

17  employment status. In less than twelve (12) hours, Ms. Hardgrove replied stating that

18  a severance package was already created for Mr. Weinberg through the IT

19  Department. Ms. Hardgrove presented a full separation agreement and severance

20  package to Mr. Weinberg on August 5, 2013. Additionally, Valeant actually hired an

21  Arizona employee, Jeremy Muir, after Mr. Weinberg left his position. Mr. Muir was

22  an independent contractor, not an employee, during Mr. Weinberg's tenure and Mr.

23  Muir was hired as an employee despite the closure of the Arizona office. Lastly,

24  Valeant cannot in good faith argue that Mr. Weinberg was slated to be relocated to

25  New Jersey and that his position was eliminated, as these positions are mutually

26  exclusive. Since Valeant cannot conclusively show that there was a legitimate,

27  alternative reason for Mr. Weinberg's termination, summary judgment should be

28  denied.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

MEMORANDUM OF POINTS AND AUTHORITIES

1

## V.    CONCLUSION

2    In accordance with the foregoing, Plaintiff respectfully requests that the Court

3    deny Defendant's motion for summary judgment.

4

5    DATED:  July 18, 2017                          GERAGOS & GERAGOS, APC

6

7                                       By:   /s/ Ben J. Meiselas

8                                             BEN J. MEISELAS
                                              ALEX ALARCON
9                                             Attorneys for Plaintiff
                                              JOSEPH WEINBERG

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411

MEMORANDUM OF POINTS AND AUTHORITIES